**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DEVONE CHAN

       PLAINTIFF,

   *v.*

JIFFY LUBE INTERNATIONAL, INC.

       DEFENDANT.

Civil Action No.

Jury Trial Demanded

## PLAINTIFF'S ORIGINAL
## COMPLAINT AND JURY DEMAND

Plaintiff, Devone Chan, by and through his undersigned counsel, files this Complaint for racial discrimination, hostile work environment, retaliation in violation of 42 U.S.C. §2000e et. seq. and 42 U.S.C. §1981 against Defendant, Jiffy Lube International, Inc., and alleges as follows:

<u>PARTIES</u>

1.

Plaintiff Devone Chan is a citizen and resident of the United States currently residing in Gwinnett County, GA.

2.

Defendant Jiffy Lube International, Inc. is based in Delaware and may be served with process by serving its registered agent, C T Corporation System at 289 S Culver St, Lawrenceville, GA, 30046-4805.

<u>JURISDICTION AND VENUE</u>

3.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C.§ 1343(a)(4) as this action arises under the laws of the United States, specifically 42 U.S.C. §1981.

4.

This suit is authorized and instituted pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq. ("Title VII"), and 42 U.S.C §1981 ("Section 1981").

5.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission on January 23, 2026. Plaintiff received his Notice of Rights to Sue on February 4, 2026. Hence, Plaintiff has exhausted his administrative remedies and timely brings this action.

6.

Plaintiff's claims for retaliation under 42 U.S.C. §1981 are timely filed within the four-year statute of limitations period set forth by 28 U.S.C. §1658.

7.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this action occurred within this district.

## FACTUAL BACKGROUND

8.

Plaintiff began his employment with Defendant on October 20, 2025, as a Customer Service Associate ("CSA").

9.

Plaintiff performed his job duties in a satisfactory manner.

10.

At the time of hire, Plaintiff was informed that he would be eligible for promotion and a pay increase if he met certain sales goals.

11.

As of January 2026, Plaintiff met the required sales goals and performance expectations.

12.

Plaintiff was told by management that he would be considered for promotion and a raise based on that performance.

13.

On or about January 5, 2026, Doug Martin ("Martin") became Plaintiff's immediate supervisor and store manager.

14.

After Martin became manager, Plaintiff observed that he was not allowed to assist Caucasian customers.

15.

Plaintiff was routinely directed to assist only African American customers.

16.

Other employees were allowed to assist customers of all races.

17.

These customer assignment practices were based on race.

18.

These practices created a racially segregated work environment.

19.

These practices treated Plaintiff differently because of race.

20.

On January 16, 2026, Plaintiff was assisting a Caucasian customer with vehicle services and entering the requested services into the system.

21.

While Plaintiff was speaking with the customer, Martin approached him.

22.

Martin told Plaintiff that he did not want to hear Plaintiff speak to Caucasian customers.

23.

Martin then went ahead used a racial slur toward Plaintiff and called Plaintiff the n-word.

24.

Plaintiff immediately objected to the statement.

25.

Martin repeated the racial slur and walked away.

26.

Plaintiff felt unsafe, humiliated, and threatened by this conduct.

27.

Plaintiff informed the District Manager and submitted a written complaint to the Human Resources.

28.

Plaintiff's complaint reported the racial slur, discriminatory customer assignments, and unequal treatment.

29.

Plaintiff left the workplace because of the incident.

30.

On January 17, 2026, one day after Plaintiff made his complaint, Defendant suspended Plaintiff without pay.

31.

Plaintiff was allowed to return to work on or about January 21, 2026.

32.

After his return, Plaintiff was informed that the suspension was wrongful, and he was paid for the time he had been suspended.

33.

Despite being paid, Plaintiff's weekly work hours were reduced from 40 hours to 20 hours beginning on or about January 23, 2026.

34.

On one occasion, a colleague volunteered to take time off to offer time for Plaintiff's shift, but Martin instructed that Plaintiff had to go home instead.

## COUNT I
### RACIAL HARASSMENT IN VIOLATION OF TITLE VII
#### 42 U.S.C. § 2000e-2(a)

35.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 34 of this Complaint as though fully set forth herein.

36.

At all relevant times, Plaintiff was an employee within the meaning of 42 U.S.C. § 2000e(f).

37.

At all relevant times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e(b) employing more than 200 employees.

38.

During Plaintiff's employment, Plaintiff was subjected to severe and pervasive racial harassment.

39.

On January 16, 2026, Martin directed Plaintiff not to speak or assist a Caucasian customer.

40.

Martin then used a racial slur and called Plaintiff the n-word.

41.

Plaintiff immediately objected and asked why Martin was speaking in that manner.

42.

Martin repeated the racial slur and walked away.

43.

The use of this racial slur created a hostile, intimidating, and offensive work environment.

44.

Defendant knew or should have known about the harassment as Martin had been previously terminated for similar reasons.

45.

Despite Plaintiff's report, Defendant failed to take prompt and effective remedial action to stop the racial harassment.

46.

Plaintiff's work environment was permeated with racial discrimination and intimidation because of his race, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

## COUNT II
## RACIAL HARASSMENT IN VIOLATION OF SECTION 1981

47.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 35 of this Complaint as though fully set forth herein.

48.

At all relevant times, Plaintiff and Defendant engaged in a contractual

relationship within the meaning of 42 U.S.C. § 1981.

49.

At all relevant times, Defendant was an employer under 42 U.S.C. § 1981 and employed Plaintiff to perform customer service duties.

50.

During Plaintiff's employment, Defendant subjected Plaintiff to a racially hostile work environment.

51.

Plaintiff was routinely assigned to assist only African American customers, while other employees were permitted to assist customers of all races.

52.

On January 16, 2026, Martin directed Plaintiff not to speak or assist Caucasian customers.

53.

Martin then used a racial slur and called Plaintiff the n-word.

54.

Plaintiff immediately objected and asked why Martin was speaking in that manner.

55.

9

Martin repeated the racial slur and walked away.

56.

The racial slur and discriminatory customer assignments created a hostile, intimidating, and offensive work environment.

57.

Defendant knew or should have known about the racial harassment as Martin had been earlier terminated for similar conduct.

58.

Despite Plaintiff's complaint, Defendant failed to take prompt and effective action to stop the racial harassment.

59.

Defendant's conduct interfered with Plaintiff's rights to make and enforce contracts, including his employment contract, on an equal basis regardless of race, in violation of 42 U.S.C. § 1981.

<u>COUNT IIII</u>
<u>RETALIATION IN VIOLATION OF TITLE VII</u>
<u>42 U.S.C.§2000e-3(a)</u>

60.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 35 of this Complaint as though fully set forth herein.

61.

At all relevant times, Plaintiff was an employee within the meaning of 42 U.S.C. § 2000e(f).

62.

At all relevant times, Defendant was an employer within the meaning of 42 U.S.C. § 2000e(b).

63.

On January 16, 2026, Plaintiff engaged in protected activity by reporting to the District Manager and Human Resources that Martin had used a racial slur toward him and engaged in racially discriminatory conduct.

64.

Beginning on or about January 23, 2026, Defendant reduced Plaintiff's weekly work hours from 40 hours to 20 hours.

65.

The reduction in hours constituted an adverse employment action because it affected Plaintiff's compensation and terms of employment.

66.

The reduction in hours was causally connected to Plaintiff's protected activity, including his complaint about racial harassment and discrimination.

67.

Defendant knew of Plaintiff's protected activity at the time the adverse

action was taken.

68.

Defendant's suspension of Plaintiff was intended to retaliate against him for engaging in protected activity under Title VII.

## COUNT IV
## RETALIATION IN VIOLATION OF SECTION 1981

69.

Plaintiff re-alleges and incorporates by reference paragraphs 1 to 35 of this Complaint as though fully set forth herein.

70.

At all relevant times, Plaintiff and Defendant were engaged in a contractual relationship within the meaning of 42 U.S.C. § 1981.

71.

On January 16, 2026, Plaintiff engaged in protected activity by reporting that Martin used a racial slur and engaged in racially discriminatory conduct.

72.

Beginning on or about January 23, 2026, Defendant reduced Plaintiff's weekly work hours from 40 hours to 20 hours.

73.

The reduction in hours constituted an adverse employment action

because it affected Plaintiff's wages, benefits, and terms of employment.

74.

The reduction in hours was causally connected to Plaintiff's protected activity, including reporting racial harassment and discrimination.

75.

Defendant knew of Plaintiff's protected activity at the time the suspension was imposed.

76.

Defendant's actions were taken with the intent to retaliate against Plaintiff for engaging in protected activity under 42 U.S.C. § 1981.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a trial by jury on all issues trial by a jury and respectfully requests the following relief:

1. Compensatory damages for lost wages, economic benefits of employment to Plaintiff in the amount to be determined by the trier of fact;

2. Compensation for emotional distress and humiliation;

3. Punitive damages to punish Defendant for its discriminatory actions;

4. Cost of litigation in this action and her reasonable attorney's fees;

5.  Any other relief the Court deems just and proper.

Respectfully submitted this 26th day of February 2026.

**JESSE KELLY PC**
By:    /s/ Jesse L. Kelly
Jesse L. Kelly, Esq.
Georgia Bar No. 935869
355 Lenox Road Suite 1000
jesse@jkellypc.com

14

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 5.1, the undersigned, attaches this Certificate of Service

This 26th day of February 2026.

**JESSE KELLY PC**

*/s/ Jesse Kelly*
**Jesse L. Kelly**
Ga Bar No. 935869
3355 Lenox Rd. Suite 1000,
Atlanta, GA 30326
Phone: (678) 460-6801
Fax: (678) 730-3443
jesse@jkellypc.com

15